## Thomas J. Henneberry, et al., v. Hugh A. Binns, et al.

1. SENIOR MORTGAGE—*junior mortgagee not estopped to question amount due under.* While an estoppel to deny the validity of a senior mortgage may exist as against a junior mortgagee where his mortgage has been expressly made subject thereto, yet such mortgagee is not precluded from questioning the amount due under such senior mortgage.

Bill in chancery. Appeal from the Circuit Court of Logan County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed March 20, 1906.

BEACH, HODNETT & TRAPP, for appellants.

BLINN & COVEY, for appellees.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Appellees filed a bill in chancery against appellants for an accounting and upon the hearing were awarded a decree for $901.33 (i.e. $618.01 to Binns and $283.32 to Ford), from which decree an appeal was taken by appellants.

Prior to the 18th day of July, 1903, one Hallinan had entered into a contract with the firm of Beggs, Lynd & Henneberry to sell them a lot of about 5,000 bushels of corn; a part of it at thirty-five cents per bushel and a part at thirty-six cents per bushel.

On the eighteenth day of July, 1903, Hallinan made two chattel mortgages, one to Henneberry (a member of said firm) and others, to secure one note to Henneberry for $1,443.86; one note for $700 payable to one Brennan; one for $400 payable to Taylor & Company, and in such mortgage also agreed to secure said Henneberry against loss as surety for having signed four promissory notes with Hallinan, one for $150 payable to Charles Spence; one for $150 to Mike Tierney; one to L. C. Schwerdtferger for $220, and one for $350 payable to Prather and Company; the other of said two chattel mortgages was made to Binns and Ford to secure the payment of $900.

The first of said two mortgages covered said lot of corn and some other property. The mortgage to Binns and Ford was made subject to the mortgage of Henneberry et al. and covered the same property, except the corn. Both mortgages were in the usual form with covenant upon the part of the mortgagor that he was lawfully possessed of the said goods and chattels as of his own property, etc.

In August, 1903, Hallinan delivered the corn to Henneberry, who, it is claimed, took and accepted it upon his firm's contract at the agreed price, although at the time of the delivery it was worth forty-eight cents per bushel.

Afterwards Henneberry foreclosed his mortgage, and from the entire proceeds received the sum of $4,691.44, if he be charged with the corn at forty-eight cents per bushel. He paid all the items of indebtedness described in the first mortgage and expenses in the sum of $599.42, which aggregated

$3,761.86, leaving a balance in his hands of $929.65, unless he is credited with payment of several items not embraced or described in his chattel mortgage.

Appellants seek to escape liability upon an accounting to said second mortgagees for said over-plus upon several grounds. First, they contend that Henneberry (acting for his firm) received said corn under his contract of sale and he cannot be made to account to the second mortgagees for the actual value of the corn when he received it. This position is not consistent and cannot be sustained. When Henneberry took a note for the amount due from Hallinan and a mortgage to secure it he, by that action, abandoned his alleged contract of sale. He might have secured his contract of sale by mortgage if he had chosen to do so, but by taking a note, which called for the payment of a sum certain, in cash, he elected to accept the cash, in place of the fulfillment of the contract, and if corn had gone down below the agreed price of thirty-five and thirty-six cents per bushel he could not have been forced to accept less than the amount due on the note, by its terms.

Appellants further contend that appellees are not in position to ask them for an accounting because appellees had no mortgage upon the corn and therefore could not complain of its disposition.

The rule is well established in equity that "A person having the right to satisfy his debt out of two funds, to but one of which another can resort, should be compelled first to exhaust the fund to which the other cannot resort before coming upon the one available to both." 2nd Amer. & Eng. Ency. Law, vol. 19, page 1256.

"The application of the doctrine is in no way affected by the nature of the property constituting the different funds. The rule is enforced whenever a paramount creditor can resort to two funds to only one of which a junior creditor has access." *Idem,* page 1262.

Under this rule appellants were bound to resort first to the corn for the payment of their debt as against the second mortgagees, and therefore appellees can, in this case, insist

upon an accounting for its actual value at the time of its delivery to appellants.

Appellants next contend that since appellees' mortgage was made subject to that of appellants that they are estopped from denying the amount due upon the notes described in such mortgage. We know of no rule that supports that claim.

Appellants cite us to several authorities upon the proposition that a mortgagee or grantee whose right is subject to that of another is estopped from denying the *validity* of the prior claim, but that does not arm the owner of such prior claim with authority to demand more than is actually due; if it did he could not be made to account for payments received by him upon his debt, after taking his mortgage or other security. The court was right in allowing appellants credit for such sum only, as was *actually due* upon the notes described in their mortgage.

The trial court was also right in refusing to credit Henneberry with the payment of claims not described in his chattel mortgage, notwithstanding the fact that some of the debts described therein were described as larger than they were in fact.

To allow appellants to apply funds to the payment of other debts under the claim of paying future advancements, or to use the difference between the actual amount due upon the claims described in the mortgage and the face of the notes, to the payment of claims not described in the mortgage, would be to allow them to change and alter the terms and conditions of the mortgage itself, to the prejudice of the subsequent incumbrance.

It is also contended that Beggs and Lynd should have been made parties to the bill, inasmuch as the corn was bought by the firm before taking the chattel mortgage, and an accounting therefor is asked of the money received by Henneberry.

The evidence shows that Henneberry was acting for the firm of which he was a member and, so far as the interests of the firm were concerned, accepted the mortgage in his individual name, handled and disbursed the funds arising from

the sale.   He is the only one, under the evidence, who could be held as a trustee in this proceeding.   The note and mortgage under which we hold that Henneberry must account, were made to him as an individual and all the proceeds of the property came into his hands as such individual; he may have been acting for the firm and for their interest so far as their rights between themselves may go; but as to the rights of appellees he was acting solely as an individual.

The decree of the court was right and is affirmed.

*Affirmed.*